| | | | |
|---|---|---|---|
| Case No. | EDCV JGB 15-2103 (DTBx) | Date | May 12, 2017 |
| Title | *Michael McIntyre v. Aetna Life Insurance Company* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **FINDINGS OF FACT AND CONCLUSIONS OF LAW (IN CHAMBERS)**

   This is an action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA") for recovery of long term disability benefits under a group disability policy ("Plan") administered by Aetna Life Insurance Company for the benefit of The Home Depot, U.S.A., Inc.'s ("Home Depot") employees. In addition to benefits, Plaintiff seeks compensatory damages, attorneys' fees, and costs. (Dkt. No. 1, 2.) The Court has jurisdiction over Plaintiff's claims under 29. U.S.C. § 1132(e). Venue is proper because the acts complained of occurred within the Central District of California. 29 U.S.C. § 1132(e)(2).

## I. BACKGROUND

   Michael McIntyre ("Plaintiff") seeks Long Term Disability Benefits ("LTD Benefits") that were denied by his insurer Aetna Life Insurance Company ("Aetna"). In this action, Plaintiff challenges Aetna's denial of his disability benefits under a plan provided by his former employer, Home Depot, to protect its employees against the risk of disability.

   Plaintiff worked as a Sales Associate for Home Depot for nine years, beginning in May of 2005. (A0150, A0293-0297.) Around February of 2014, Plaintiff experienced severe back pain that prevented him from working, (A0194), and his neurologist, Dr. AmirNovin, M.D., determined that microdiscectomy surgery was necessary. (A0400-0401.) On February 21, 2014, Dr. AmirNovin performed L4-L5 microscopic discectomy surgery. (Id.) Throughout 2014, Plaintiff continued to see Dr. AmirNovin on a monthly basis to monitor his recovery. (A0410.) During this period, Dr. AmirNovin consistently determined that Plaintiff could not return to his

job, which is reflected in his Out of Work Letters ("OOW"). (A0521, A0159, A0437.) Plaintiff's condition worsened during the summer months of 2014, at which time he was referred to see a pain management specialist. (A0341.) Doctors Wang and Mehta —an internist and an anesthesiologist—treated Plaintiff for his health conditions and resulting pain. (A0476.)

In or about March of 2014, Plaintiff submitted a claim for California State Disability Insurance ("SDI") payments, certified by Dr. AmirNovin. (A0381-0387.) Dr. AmirNovin submitted a Physician Supplementary Certification for Continuing Eligibility to the Employment Development Department for the State of California on May 14, 2014. (A0379.) Plaintiff was approved and received SDI payments through February 26, 2015. (A0428-0429.) This is the maximum allotment of benefits available under California's SDI. (A0429.) When Plaintiff's SDI benefits expired, he applied for LTD Benefits through his insurer, Aetna. (A0292.) Aetna received Plaintiff's LTD claim forms on February 13, 2015. (A0292.) On April 6, 2015, Aetna denied Plaintiff's claim. (A0481-0484.) Plaintiff appealed Aetna's denial of his claim on April 20, 2015. (A0519-0529.) On July 8, 2015, Aetna's appeals division upheld the denial. (A0561.)

## A. The Plan

Plaintiff is eligible to apply for benefits under the Plan as he was an employee of Home Depot and at all relevant times enrolled in the Plan. (A0222.) The Plan was funded and administered by Aetna, (Plan Number 0839229), and Plaintiff paid all premiums due for disability coverage under the Plan. (A0561-0563.) Plaintiff's pre-disability income was $15.70 per hour, (A0170), which entitles him to a pre-disability monthly income of $2,721.33. (A0428-0429.) As such, he would be entitled to a gross monthly benefit of $1,632.80. (60% of $2,721.33) (A0160).

To be eligible for LTD Benefits under the Plan, a participant must establish that he suffers from a disease or illness that prevents him from engaging in "any gainful activity" based on his "education, training, or experience."[1] (A0338) Further, "gainful activity" is defined as an occupation that results in an income of "more than 60% of [] adjusted pre-disability earnings."[2] (A0038);(A0133-0151.)

Under Home Depot's total disability plan, if a claimant is capable of doing sedentary work, he cannot receive benefits. (Id.) According to the Plan, "sedentary work" involves "exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body." (A0483) ("Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are

---

[1] Test of Disability: "[Claimants] meet the test of disability on any day that if [claimant is] unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition." (A0562.)

[2] Reasonable Occupation: "This is any gainful activity: For which [claimant is], or may reasonably become, fitted by education, training, or experience; and Which results in, or can be expected to result in, an income of more than 60% of [claimant's] adjusted pre-disability earnings."

sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.")

**B. Aetna's Denial**

On April 6, 2015, Aetna's Disability Benefits Manager ("DBM"), Bibi Ally sent Plaintiff a letter denying his LTD Benefits claim. (A0481.) In the letter, Aetna states:

> Based on the review of the above information from all your treating providers, it is reasonable that you would have sedentary work capacity at the time of your Aetna claim effective date of August 22, 2014. There were insufficient, updated, quantitive physical examination findings to correlate with the diagnosis that would support a functional impairment which would preclude you from performing any reasonable occupation.

(A0483.) Aetna determined that Plaintiff did not meet the criteria to be considered permanently disabled under its policy after completing a Transferable Skills Analysis ("TSA"). (A0562.) The TSA considers claimants' training, education, experience, reasonable wage in relation to claimants' functional capacity to perform full-time sedentary level work. (Id.) Aetna conducted a Vocational Rehabilitation Consultant ("VRC") review and Labor Market Analysis and identified three occupations—(1) Telephone Operator, (2) Routing Clerk, and (3) Credit Checker —that Plaintiff could physically perform. Since Aetna determined that these occupations would allow Plaintiff to earn a "reasonable wage of $9.42 per hour," Aetna concluded that Plaintiff did not meet the Test of Disability. (A0563.)

The DBM's conclusion that Plaintiff could perform sedentary work, thereby precluding a finding of total disability, was upheld on appeal. (A0561-A0563.) On July 8, 2015, an appeals specialist for Aetna, Melissa Fehd, sent a letter to Plaintiff explaining why the denial of his claim for benefits was upheld:

> Our records show that the first date you were absent from work was February 21, 2014, due to low back surgery. On review of your claim to determine if you met the Test of Disability under the policy language previously provided, we determined that as of August 22, 2014, when your Long Term Disability benefits would have started you did not meet the criteria to be considered disabled and your claim was denied. (A0561.)

Aetna pointed out that in July of 2014, Plaintiff was only taking Naproxen, walking 20 minutes at a time, and losing weight steadily. (A0562.) Aetna also noted that there were no major changes nor any nerve compression apparent on the MRI. (Id.) Dr. AmirNovin stated Plaintiff's symptoms "were likely due to meralgia paresthetica" and advised Plaintiff "to remain active and to continue [his] weight loss efforts." (Id.) On these bases, Aetna concluded that the records did not provide any evidence that Plaintiff was unable to perform sedentary work as of August 22, 2014. (Id.)

**C. Evidence Considered**

The letter from Aetna's DBM states that Aetna considered the following information when reviewing Plaintiff's claims:

- MRI lumbar spine dated April 27, 2013
- Chest X-ray dated February 14, 2014
- Office notes dated February 19, 2014 from Dr. AmirNovin
- Operative report dated February 21, 2014
- Office visit notes March 24, 2014, April 23, 2014, July 21, 2014, September 3, 2014, and December 3, 2014 From Dr. AmirNovin
- Office visit notes dated April 16, 2014, August 25, 2014 and November 4, 2014 from Dr. Wang
- Physical therapy notes dated July 22, 2014, June 4, 2014
- MRI lumbar spine dated August 19, 2014
- MRI of lumbar spine dated August 25, 2014
- Physical therapy discharge dated October 13, 2014
- Office notes dated January 7, 2015, October 24, 2014 from Dr. Mehta
- Attending physician form signed completed and dated February 9, 2015 from Dr. Wang
- Capabilities and Limitation worksheet completed and dated February 20, 2015 from Dr. Wang
- Letter from Dr. Mehta dated March 11, 2015, office visit notes dated February 2, 2015, and February 20, 2015 - Letter from Dr. Mehta dated March 19, 2015, with duplicate copy of MRI results dated August 2S, 2014
- Blank work capacity letter faxed to Dr. Mehta for his rationale on functionality
- Letter from Dr. Wang dated March 19, 2015 with blank work capacity letter faxed to Dr. Wang for his rationale on functionality

(A0482.) Ms. Fehd stated that in denying Plaintiff's appeal, Aetna considered his entire file. Specifically listed in that letter are the following records:

- Dr. Michael Wang (internist & primary physician)
    - office visit notes dated August 25, 2014, November 4, 2014, March 19, 2014, April 22, 2014, April 16, 2014;
    - Capabilities & Limitations Worksheet dated February 20, 2015; and
    - an Attending Physician Statement dated February 9, 2015.
- Dr. Dharmesh Mehta (anesthesiologist & pain management specialist)
    - letter dated April 16, 2015;
    - office visit notes dated March 18, 2015, March 11, 2015, February 20, 2015, and January 21, 2015;
    - a pre-operation examination January 7, 2015; and
    - a procedure note dated January 7, 2015.
- David Kandel (physical therapist)

- Initial evaluation dated June 4, 2014;
- Daily notes June 7, 2014, through August 14, 2014; and
- a progress note July 22, 2014.
- Dr.Ramin Amir Novin (neurosurgeon)
    - progress notes dated December 3, 2014, September 11, 2014, September 3, 2014, July 22, 2014, April 23, 2014, March 24, 2014, March 10, 2014, March 3, 2014, and February 19, 2014;
    - Operative Report dated February 21, 2014; and
- Dr. Katharine Tansavatdi (radiologist)
    - MRI Lumbar spine dated August 25, 2014.

(A0562.)

## II. FACTUAL FINDINGS

Plaintiff told Dr. AmirNovin during an office visit on June 23, 2014 that his lower back pain was getting worse. (A0409.) An Office Visit Note ("OVN") for that visit describes the "severe lower back pain" Plaintiff experienced after sitting down for dinner. (A0409.) Dr. AmirNovin observed that Plaintiff's condition was not improving as Plaintiff's "lower back pain [was] worse." (Id.) These observations led Dr. AmirNovin to "suspect that [Plaintiff had] either re-bulged a disc or had a settling in his disc space." (Id.) As such, Dr. AmirNovin found reimaging to be warranted. (Id.) The MRI of the lumbar disk was performed on or about August 19, 2014. (A0418.)

On August 25, 2014, Dr. AmirNovin described the results of the MRI images as follows:

> Postsurgical changes of interval possible right L4 hemilaminectomy is seen along with probable microdiscectomy involving previously seen central disc protrusion at L4-5. Old L5-S1 semi-laminectomies are seen with residual STIR hypersensitivity seen in the paraspinal right L4-5 and midline L5-S1 level. Posterior subcutaneous edema is also noted.

(A0468.) The clinical findings of the MRI results are described in Dr. AmirNovin's OVN dated September 3, 2014. (A0407.) Dr. AmirNovin noted "disc protrusion at L4-5 with rounded 3 mm," and "T2 hyperintensity on sagittal images in the right subarticular." (A0469.) He describes the "[b]road-based right paracentral/subarticular 3 mm disc protrusion at L1-2" as "unchanged," and states that the MRI indicates "[m]ild circumferentially bulging discs and mild bilateral L5-S1." (Id.) (A0465.) The MRI indicated a "small right L 1/2 disc bulge." (Id.)

On or around September 3, 2014, Dr. AmirNovin referred Plaintiff to pain management specialist, Dr. Dharmesh S. Mehta. (A0464.) After seeing Plaintiff on a monthly basis beginning in or about September 2014, Dr. Mehta described the ten diagnoses reached by Plaintiff's treating physicians in a letter to Aetna's DBM:

1. Lumbar post-laminectomy syndrome

2. Thoracic or lumbosacral neuritis or radiculitis
3. Sciatica
4. Lumbosacral spondylosis
5. Chronic pain syndrome
6. Obesity, morbid
7. Pain in joint, lower leg
8. Displacement of lumbar intervertebral disc
9. Degeneration of lumbar or lumbosacral intervertebral disc
10. Low back pain.

(A0341.) In explaining his belief that Mr. McIntyre was unable to work, Dr. Mehta noted that "the onset of the low back pain has been gradual and has been occurring in a persistent pattern for 2 years," and "[t]he course has been worsening." (A0437.) He also stated that in addition to the epidural injections Plaintiff's conditions routinely required, Plaintiff had been prescribed daily pain medications for the past two years—including, among other things, narcotic pain killers, muscle relaxants, and Gabapentin—on a monthly basis. (A0326, A0331.)[3] Dr. Mehta summarized Plaintiff's irregular neurologic symptoms as follows:

- Sensory: Parasthesia- Right L3, Left L3, Right L4, Left L4, Right L5, Left L5, Right S1 and Left S1
- Light Touch: Decreased - Right L3, Left L3, Right L4, Left L4, Right L5, Left L5, Right S1 and Left S1
- Pain: Increased . . . (see above)

Dr. Mehta described Plaintiff's irregular motor symptoms as follows:

- Tone: Spastic – Left Lower Extremity, Right Lower Extremity and Back Extensors
- Plantar Reflexes (L4-S2)
    - "Impairment of walking on toes, Impairment of walking on heels, Impairment of heel-to-shin or Impairment of finger-to-nose (A0459.)

On June 4, 2014, Plaintiff began physical therapy with Dr. Kandel. (A0508.) On June 23, 2014, Plaintiff saw Dr. AmirNovin again because he started to experience numbness in his right thigh. (A0409.) An Office Progress Note written by Dr. AmirNovin on December 3, 2014 states that Plaintiff "returns after epidural steroid injections without improvement in his Right lateral thigh pain." (A0406.) On March 11, 2015, Dr. Mehta sent a letter to Dr. AmirNovin informing him that the continued pain medication was necessary as the back pain "is aggravated by bending, sitting, standing and walking." (A0451.) Dr. Mehta described how "[t]he back pain is relieved by bedrest and medication," and "[t]he pain interferes with walking and work severely."

---

[3] For instance, on May 15, 2014 Dr. AmirNovin prescribed one to two tablets of Norco to be taken by Plaintiff every four hours. (A0405.) On June 18, 2014—four months after the surgery—Dr. AmirNovin prescribed Plaintiff Soma and Carisoprodol to be taken four times daily. (A0404.)

(Id.) Dr. Mehta notes the existence of tenderness upon inspection, and describes the "causative factors" as "driving, rising from seated position, prolonged sitting, recumbent position, sitting, standing from sitting position and walking." (A0453-0454.) After an office visit on February 20, 2015, Dr. Mehta described Plaintiff as "very uncomfortable due to pain." (Id.) In addition to noting tenderness, Dr. Mehta also observed that Plaintiff's "[s]ensation is – diminished." (A0460.) Significantly, Dr. Mehta identified "movement" as a causative factor. (A0446.)

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A. De Novo Standard of Review**

A denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 956-957 (1989). Where the plan or policy grants such discretion, the standard of review is abuse of discretion. Id. at 957; Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en banc). However, provisions that reserve discretionary authority to insurers to determine eligibility for benefits in contracts or policies in effect after January 1, 2012, are void and unenforceable under California Insurance Code § 10110.6. [4] Accordingly, this Court will review Aetna's decision to deny Plaintiff Long Term Disability Benefits under the Plan de novo.

**1. Plaintiff is Permanently Disabled**

A de novo review of the Administrative Record convinces this Court that Aetna's denial of Plaintiff's claim for LTD Benefits was improper. Plaintiff has demonstrated that he qualifies as permanently disabled under the terms of the Plan. Plaintiff has provided medical records that demonstrate that every doctor who personally examined him concluded he was unable to work. Further, according to Plaintiff's treating physicians, the MRI Results validate the various

---

Courts apply greater scrutiny to denials of disability benefits when the insurer has both the power to determine whether the claimant is disabled and funds the plan:

> We have held that an insurer that acts as both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict of interest. On the one hand, such an administrator is responsible for administering the plan so that those who deserve benefits receive them. On the other hand, such an administrator has an incentive to pay as little in benefits as possible to plan participants because the less money the insurer pays out, the more money it retains in its own coffers

Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965–66 (9th Cir. 2006)(internal citation omitted); See Tremain v. Bell Indus., Inc., 196 F.3d 970, 976 (9th Cir.1999) (noting that a conflict of interest exists when an insurer both administers and funds an ERISA plan).

diagnoses from which Plaintiff suffers, (see, e.g., A0464), which contravenes Aetna's bases for denying Plaintiff's claim.

To discount the clinical findings submitted with Plaintiff's claims, Aetna argues that (a) "[t]here were insufficient, updated, quantitative physical examination findings to correlate with the diagnosis that would support" permanent disability, and (b) Plaintiff's treating physicians are in disagreement as to Plaintiff's degree of disability. (Dkt. No. 21, 15.) To sustain its finding that Plaintiff is only temporarily disabled Aetna defies the opinions of all three of his medical providers.

### a. Aetna Failed to Properly Consider Evidence of Disability

As mentioned above, Aetna concluded that Plaintiff had the functional capacity to perform sedentary work even though Plaintiff's treating physicians submitted letters stating he could no longer work because he was permanently disabled. Aetna argues that the medical records that support a finding of total disability do not indicate Plaintiff's doctors believed it to be any more than temporary. After reviewing the record, however, Plaintiff's physicians conclusions are contrary to Aetna's finding of temporary disability. While Aetna consistently characterizes the Office Visit Notes as reflecting Plaintiff's inability to return to his *own* job—thus consistent with a finding of "temporary disability"— an independent review of the record indicates that as Plaintiff's severe pain and back problems persisted, the treating physician arrived at the conclusion that he could not return to work at all. Accordingly, Aetna's denial of Plaintiff's entitlement to LTD Benefits conflicts with the medical opinions of his treating physicians. Further, Aetna's conclusions place undue weight on marginal evidence to draw unwarranted inferences in support of its denial. The reasons the Court finds these inferences unwarranted will be discussed in more detail below.

### i. Plaintiff Provided Sufficient Medical Findings of Permanent Disability

Aetna argues that the Office Notes submitted by Plaintiff's treating physicians only show that "McIntyre was temporarily disabled from performing his *usual* occupation" (A0359.) However, the weight of the evidence shows that Plaintiff's doctors believed he was totally disabled from doing any work as of August of 2014. For instance, Dr. Mehta "attest[ed] [to the fact that] Mr. McIntyre [was] [sic] severe pain and his pain [would] increase with activity," to conclude that Plaintiff "[was] unable to return to work at this time." (Id.) Similarly, since at least February of 2014, Dr. AmirNovin consistently stated "no work" on the Certification of Health Care Provider Forms, and answered "yes" to the question "are the treatments or the reduced number of hours of work medically necessary." (A0388-0389.)

As such, Aetna's conclusion that "[t]here were insufficient, updated, quantitive physical examination findings to correlate with the diagnosis that would support a functional impairment which would preclude [Plaintiff] from performing any reasonable occupation" is contradicted by the record. (A0483.) Aetna's denial letter states that "Dr. Mehta did not submit any clinical

rationale or any resent [sic] test results." (A0464.)[5]  This statement contradicts the clinical rationales, recent test results, diagnoses, and conclusions of the physicians that saw Plaintiff on a monthly basis for over two years.

In fact, when Aetna asked Dr. Mehta to submit clinical rationales to support his finding of permanent disability, Dr. Mehta sent a letter stating that the MRI report validates his diagnosis and his diagnoses alone validates his pain. (A0464.)  Dr. Mehta sent a summary of an office visit dated January 21, 2015 to Dr. AmirNovin that describes his back pain as "occurring in a persistent pattern for 2 years," and states that "[t]he course has been worsening." (A0437.)  Dr. Mehta continues to describe the pain as "radiat[ing] to the lateral aspect of right leg and lateral aspect of left leg." (Id.)  The summary notes state "[t]he back pain is aggravated by bending, sitting, standing and walking," "interferes with walking and work severely," and is relieved by "bedrest and medication." (Id.)  Dr. Mehta concluded that Plaintiff "is unable to life anything over 5 lbs. . .stoop, stand over a minutes [sic] at a time or walk any distance without experiencing severe pain." (Id.)

Aetna's contention that "Dr. Wang did not submit any clinical rationale or any resent [sic] tests to substantiate his assessment of no work capacity," is similarly contrary to facts. (A0483.)  In the copious medical records submitted to Aetna by Plaintiff's treating physicians the doctors uniformly stated that their diagnoses and treatment decisions and Plaintiff's severe pain were "documented as positive utilizing a standardized tool." (See, e.g., A0543, 3/18/15, A0546, 4/15/15, A0549, 5/13/15.)  According to his doctors, therefore, the severity of Plaintiff's paoin was confirmed by standardized tools accepted in the medical community, which refutes Aetna's contention that the only evidence of functional impairment were Plaintiff's subjective complaints.

On March, 11, 2015, in a letter from Dr. Mehta to Aetna, Dr. Mehta repeats his assessment that Plaintiff could not return to work because he could not "lift anything over 5 lbs, stand over a [sic] minutes at a time or walk any distance without experiencing severe pain." (A0450.)  On March 18, 2015, in a letter to Aetna's DBM, Dr. Mehta reaffirms that Plaintiff could not lift anything over 5 lbs, stating that "[a]ll of these diagnoses [Post Laminectomy Syndrome, Displacement of Lumbar Intervertebral, Lower Leg Pain with Numbness, Low Back Pain, and Degeneration of Lumbar] are associated with pain and though Mr. McIntyre is encouraged to walk 30 minutes at a time and increase his activity, he does so but with severe pain." (A0464.)  Dr. Mehta states "[t]hat [the] pain will increase with prolonged activity and prevent him from

---

[5] It is puzzling that Aetna's explanation for its denial in the letter sent to Plaintiff states that neither Dr. Wang nor Dr. Mehta provided "submitted any clinical rationale or any resent [sic] test results," when both doctors included test results, including the recent MRI results, and all of Plaintiff's medical records in faxes submitted to Aetna in support of their clinical assessments finding Plaintiff permanently disabled. (Id.)  Indeed, the previous page of Aetna's letter lists "a duplicate copy of MRI results dated August 25, 2014" as information submitted to Aetna by Dr. Mehta. (A0482.)

working a 4 hour or 6 hour or an 8-hour shift." (Id.) Again, Dr. Mehta directs Aetna to "review [] [the] MRI report to validate his diagnosis's [sic] and his diagnosis alone validates his pain." (Id.) Notwithstanding Aetna's characterization of the evidence Plaintiff submitted, it appears that Plaintiff's treating physicians deemMRI results as objective proof of disability.

### b. Plaintiff's Doctors Considered Aetna's Definition of Sedentary Work Capacity and Drew Consistent Conclusions

Aetna argues that "the lack of objective evidence combined with contradictory evidence from Plaintiff and his treating physicians outweighed Plaintiff's subjective complaints." (Dkt. No. 21, 14.) The Court does not read the treating physicians' conclusions to be inconsistent. Rather, the medical records disclose an evolving consensus among Plaintiff's physicians marked by waning optimism as to his prospects for full recovery. Not only did Aetna's personnel read Dr. Wang and Dr. Mehta's conclusions that Plaintiff was permanently disabled as consistent, but an independent review of the record confirms that Plaintiff's treating physicians were in agreement as to Plaintiff's totally inability to perform any work at any time during the relevant period. (See A0249, A0197, A0199.) Accordingly, Aetna could not elude Plaintiff's doctors' finding of permanent disability on this basis.

### i. The Treating Physicians Did Not Base Their Conclusions on Plaintiff's Capacity to Perform His Sales Associate Job at Home Depot

Aetna's interpretation of Plaintiff's medical records as pertaining exclusively to his job at Home Depot—and therefore irrelevant under the total disability standard—overlooks the actual communications between Plaintiff's doctors and Aetna personnel. Aetna argues that "Plaintiff's doctors did not submit information related to Plaintiff's ability to perform any reasonable occupation, but continued to submit support for Plaintiff's ability to perform his *own* occupation." (Dkt. No. 21, 9.) But the doctors' correspondence with Aetna makes it highly unlikely that Plaintiff's physicians based their findings of total and permanent disability on Plaintiff's ability to perform the duties of his job at Home Depot. Aetna gave insufficient weight to the doctors who had the most intimate understanding of Plaintiff's condition over an extended period of time.

To illustrate, a letter written by Dr. Michael Wang to Aetna on March 19, 2015 reads: "He continues to have severe pain," "Mr. McIntyre's condition is permanent," "[h]e no longer is capable of working and he requires long-term disability benefits." (A0476.) This letter was in response to a fax sent by Aetna on March 11, 2015, asking Dr. Wang to explain why he did not agree that his patient was capable of performing sedentary work. (A0477.) That fax from Aetna to Dr. Wang includes Aetna's definition of "sedentary work." (Id.)[6] The letter in the fax

---

[6] On February 17, 2015, Bibi Ally indicated that the "Fax Form Confirmation Task" was "closed." (A0162.) It is reasonable to assume that "closed" indicates the fax was sent to

instructs Dr. Wang to sign if he is "in agreement with [the assessment that Mr. McIntyre would have sedentary functional capacity at this time]." This letter instructed Plaintiff's treating physicians to "provide your clinical rationale" if they did "not agree with this conclusion," which indicates that Dr. Wang's letter in response—sent to the fax number identified by Aetna's request—was intended to explain to Aetna why its assessment that Plaintiff had sedentary functional capacity was contrary to each Doctor's standardized findings of Plaintiff's condition. (Id.) If Dr. Wang did not read the definition of "sedentary work capacity" provided in Aetna's fax, it is unlikely he would have responded by faxing the letter to the fax number provided by Aetna stating he believed Plaintiff was permanently disabled exactly as Aetna directed him to do. (Id.)

The same is true for Dr. Mehta. Because Dr. Mehta crossed out the space he was directed to sign if he agreed with the insurance company's finding of sedentary functional capacity, the letter from Aetna to Dr. Mehta most reasonably indicates that Dr. Mehta read the definition of "sedentary work capacity" contained therein and believed that Plaintiff was permanently disabled. (A0470.) Rather than indicating that the doctors' permanent disability determinations were based solely on Plaintiff's capacity to perform the duties of Sales Associate at Home Depot, the fact that none of Plaintiff's treating physicians ever signed the letter establishes that none of his physicians, at any point, agreed with Aetna's assessment that Plaintiff had sedentary functional capacity. (A0477.)

### ii. Plaintiff's Doctors' Conclusions Were Consistent

Aetna discounts the clinical findings submitted with Plaintiff's claim by arguing that Plaintiff's treating physicians either: (a) did not agree on the severity or duration of Plaintiff's disability or (b) their opinions were inconsistent with their actual medical findings. For instance, Aetna argues that Dr. Mehta's belief that Plaintiff could return to work shows that Plaintiff's total disability was only temporary. Aetna maintains, therefore, that Dr. Mehta's finding of temporary disability refutes Dr. Wang's finding of permanent disability. (Dkt. No. 21, 15.)

Presumably, Aetna's DBM is not a medical doctor. For that reason, Aetna's reference to the "actual medical findings" it purports are inconsistent with the medical opinions of Plaintiff's treating physicians must refer to the findings of Dr. McPhee. Indeed, Aetna relies on Dr. McPhee's conclusions contained in his peer review of the records provided by Plaintiff's treating physicians to conclude that Plaintiff has sedentary work capacity. The documents submitted by Plaintiff's physicians indicate that Plaintiff could not lift anything over 5 pounds and could not sit, stand, or walk for any period of time without experiencing severe pain. (See, e.g., (A0279) ("Pt is no longer capable of working.") On February 9, 2015, Dr. Wang's office completed an Attending Physician Statement for Aetna. (A0278.) By selecting "Long Term/ Permanent Total

---

Plaintiff's treating physician, Dr. Wang, because the Chronological Claim Note a copy of an email from "Service ID DeliveryWare Fax" to Bibi Ally states "Your fax [626251-1396] was successfully sent to Dr. Michael Wang." (A0162.) The Aetna Note also states "letter to associate to advise Aetna received the completed LTD claim forms." (Id.)

Disability," Dr. Wang considered and rejected the notion that Plaintiff could perform "sedentary work" as defined by Aetna. (A0278.) In like manner, Dr. Wang indicated "No ability to work," on the Attending Physician Statement it sent to Aetna. (Id.) On February 17, 2015, Dr. Wang indicated "no work" on an Aetna Capabilities and Limitations work sheet. (A0324.)

Nor are Dr. Wang and Dr. Mehta's conclusions inconsistent with those of Dr. AmirNovin. Indeed, when reading Dr. AmirNovin's conclusions over the two years he monitored Plaintiff's condition, it appears that Dr. AmirNovin at no point believed that Plaintiff was physically capable of returning to work. Even though the OOWs letter written by Dr. AmirNovin characterize Plaintiff as "temporarily disabled," reading all of the letters together in chronological order indicates that each time Dr. AmirNovin made a prediction as to when Plaintiff could return to work, his notes from subsequent office visits indicate that these prior predictions were wrong. (A0378) As such, all that can from adduced by Dr. AmirNovin's repeated characterizations of Plaintiff as "temporarily disabled" is that every time Dr. AmirNovin examined Plaintiff, he found he was too disabled to work. Indeed, on the Certification of Health Care Provider Forms, Dr. AmirNovin states "no work" when asked to identify the job functions the employee is able to perform. (A0388.) Dr. Mehta's interpretation of Dr. AmirNovin's notes in a letter submitted to Aetna confirms this reading. Dr. Mehta observed that while Dr. AmirNovin's April 23, 2014 note indicates the potential for improvement, "each note there after also notes patient presents with pain and numbness." (Id.)

While Dr. Mehta concluded that "[s]itting for *any* period of time [would] only increase [Plaintiff's] pain level," (A0521), Plaintiff could not "lift anything over 5 lbs," (A0450), and could not stoop, stand, or walk for any period of minutes "without experiencing severe pain," (id.), Dr. McPhee opined that Plaintiff "would be [able to] lift/carry 10 pounds occasionally and less than 10 pounds frequently, sitting would be instructed with change of position. . . crouch or squat could be performed occasionally." (A0557-0559.) It appears, therefore, that Dr. McPhee's opinion is not like the others. However, Dr. McPhee never personally examined Plaintiff, and Aetna never sought an independent review of Plaintiff's file until Aetna came across Mr. McIntyre's "Let's Talk Cookies" Facebook Page.

### c. Aetna's Bases for Denying Plaintiff's Disability Claim Are Unreasonable

The Chronological Claim Notes ("CCN") show that Aetna agreed with the medical finding of permanent disability for much of the claim processing period. (See A0197, A0199.) The notes of Aetna's DBM suggest that contrary to Aetna's representations, it was not the medical evidence that caused it to question the permanence of Plaintiff's disability, but a post on Facebook. On February 20, 2015, the CCN written by Bibi Ally, states: "Disability started 2/21/14 and ending on: permanent." (A0164.) The Note also shows that Bibi Ally did not want to refer Plaintiff's claim for clinical review. (A0163.) It appears therefore that Aetna did not require an independent medical review of Plaintiff's file until a claim investigator discovered photos of cookies Plaintiff had decorated on Facebook. Hence, the Court is not persuaded that Aetna's decision to deny Plaintiff's LTD benefits was based all of the medical evidence, but was instead based on the fact that Plaintiff could decorate cookies. This suggests Aetna shifted its

grounds for denial, and a "continual shifting of the plan's grounds for denial [] suggest abuse of discretion." Salomaa, 642 F.3d at 679.

Aetna argues "McIntyre is unable to show that he cannot perform a sedentary job because during the entire time he claims he is disabled, he was, and is, in fact, operating his own cookie decorating business which requires more exertion than a sedentary job." (Dkt. No. 21, 2.) But the bases on which Aetna concluded that Plaintiff was amenable to recovery do not support the conclusion that Plaintiff could actually engage in gainful activity. Dr. Mehta observed:

> The question was raised if Mr. McIntyre can sit, and the answers [sic] is not for an extended period of time. Mr. McIntyre is very cautions with all movement he performs, going into a sitting position and getting up from a sitting position included. Sitting for any period of time will only increase his pain level. Mr. McIntyre has a recliner and goes from sitting to laying down frequently to adjust pain level.

(A0521, letter from Dr. Mehta dated 4/16/15.)

Moreover, Plaintiff's alleged cookie decorating business is insufficient to rebut the prognoses of his treating physicians. See Erreca v. Western States Life Ins. Co., 19 Cal. 2d 388, 396 (1942) ("Recovery is not precluded under a total disability provision because the insured is able to perform sporadic tasks, or give attention to simple or inconsequential details incident to the conduct of business."). In addition, Plaintiff need not prove that he has no chance of recovery to be considered permanently disabled under the Plan. See Opeta v. Northwest Airlines Pension Plan, 484 F.3d 1211, 1220 (9th Cir. 2007) ("Construing the word 'permanent' to require the claimant to establish with certainty that he would never recover is unreasonable, and we will not read into the Plan an unreasonable term.").

Aetna points to Plaintiff's refusal to comply with his doctors' orders to continue physical therapy for three months at the end of 2014 as a basis for denying his claims. Aetna fails to consider, however, that Plaintiff's doctors described Plaintiff's severe pain as "worsening" and exacerbated by movement during that same period. (See, e.g., A0521.) In fact, during this period, Plaintiff's treating physicians noted that he was not improving with physical therapy and the only thing Plaintiff could do to relieve his pain was bedrest and medication. (A0443.) Plaintiff's decision to not resume physical therapy in context can therefore be easily understood as medically prudent. (A0498.)

Aetna's conclusion that Plaintiff is able to perform sedentary work relies in part on its finding that absent from his medical records were any documented side effects from the medications Plaintiff was prescribed. (See Dr. McPhee's Peer Review at A0558) ( "[T]he office visits did not mention actual side effects.") As mentioned above, Plaintiff's treating physicians' determined that Plaintiff's pain was so severe as to prevent him from walking, standing, sitting, or driving for any period of time. Because Plaintiff's physicians listed "movement" as a causative factor of his shooting pain, Plaintiff faced a constant risk of debilitating pain. (A0521.) It is therefore no

surprise that his doctors deemed the daily narcotics and muscle relaxants appropriate in Plaintiff's circumstances notwithstanding their serious side effects. (A0521.)

Dr. McPhee based his conclusion that Plaintiff could perform sedentary work largely on language from only five office visit notes taken in July, August, and December 2014. (A0557.) Dr. McPhee's conclusions that Plaintiff would be able to perform sedentary work if he changed positions every 5 minutes appear to be based on Plaintiff's doctors' hope that Plaintiff would eventually recover. (Id.) But Dr. McPhee placed great significance on comments made by Plaintiff's physicians that can more reasonably read as aspirational rather than descriptive. (See, e.g., A0514, A0516.) That said, the optimism that Plaintiff could improve with physical therapy disappeared once his condition worsened in the fall of 2014. (See, e.g., A0521.) In like manner, all of the reports submitted by Plaintiff's treating physicians since the fall of 2014 show that they no longer believed his condition would improve with physical therapy. (See A0406, A0407, A0436.) None of these office notes show that Plaintiff either improved or could at any point walk, stand, climb, or lift for any period of time without experiencing severe pain. The Notes uniformly confirm Plaintiff's condition was getting worse. With that in mind, the Court cannot place much importance on the suggestion that Plaintiff "remain active."

The opinions of the treating physicians who personally examined Plaintiff are entitled more weight than those of Dr. McPhee. See Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011) (ascribing more weight to the several physicians who examined the patient in-person); Oldoerp v. Wells Fargo & Company Long Term Disability Plan, 12 F. Supp. 3d 1237, 1254 (N.D. Cal. 2014) (crediting doctors who conducted in-person medical exams); Rabbat v. Standard Ins. Co., 894 F. Supp. 2d 1311, 1320 (D. Ore. 2012) (finding the opinions of plaintiff's internists "persuasive" due to their familiarity with their patient); Hodjati v. Aetna Life Ins., CV 13–05021 SVW, 2014 WL 7466977, at *14 (C.D. Cal. Dec.29, 2014) (crediting the treating physician over contradictory evidence). Here, the Court cannot give Dr. McPhee's conclusions as much weight as those of his treating physicians because (a) Dr. McPhee never personally examined Plaintiff, (b) Dr. McPhee's conclusions strongly suggest a fragmentary review of Plaintiff's medical records, and (c) they directly contradict the actual findings of all of Plaintiff's treating physicians.

In sum, Mr. McIntyre carried his burden to establish that he is permanently disabled because he cannot engage in gainful activity as defined by the Plan. Dr. AmirNovin consistently concluded that Plaintiff was unable to work in every OVN he submitted. Dr. Mehta consistently concluded that Plaintiff's MRI results validated his diagnoses, which rendered Plaintiff totally and permanently disabled. Dr. Wang also confirmed that he believed Plaintiff to be permanently disabled and incapable of performing any work. Significantly, the reasons Aetna advances for questioning the opinions of Plaintiff's treating physicians do not hold up upon a comprehensive review of the administrative record. Aetna's arguments for dismissing the medical evidence Plaintiff submitted with his claim in favor of the opinions of Dr. McPhee are unpersuasive. Plaintiff provided adequate documentation to establish his permanent disability under the criteria required prescribed by the Plan. Accordingly, the Court is convinced that Aetna erred when it

denied Plaintiff LTD Benefits because his medical records directly refute his capacity to perform sedentary labor for any period of time.

## IV. CONCLUSION

Based on its findings of fact and conclusions of law, the Court concludes that Plaintiff has met his burden of proving he was permanently disabled as of August 22, 2014. The medical records also demonstrate that Plaintiff's total and permanent disability remains as Plaintiff has adequately established diagnoses that would support a functional impairment that prevents him from performing any reasonable occupation. Accordingly, Plaintiff is entitled to have a judgment entered in his favor.

For the foregoing reasons, the Court REVERSES the underlying denial of benefits and GRANTS judgment in favor of Plaintiff.

Plaintiff shall file a proposed judgment in accordance with this Order no later than May 19, 2017.

**IT IS SO ORDERED.**